UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-61133-CIV-DAMIAN

DIROY ROSENDO HOOKER WHITE,

       Plaintiff,

v.

MSC CRUISES, S.A.,

       Defendant.

_____/

## ORDER ON MOTION TO DISMISS AND COMPEL ARBITRATION [ECF NO. 4]

**THIS CAUSE** is before the Court on Defendant, MSC Cruises, S.A. ("MSC" or "Defendant"), Motion to Dismiss and Compel Arbitration [ECF No. 4], filed April 24, 2026.

THE COURT has reviewed the Motion, the Response and Reply [ECF Nos. 8 and 9], the pertinent portions of the record, and relevant authority and is otherwise fully advised. For the reasons that follow, this Court finds that the Motion is due to be granted.

## I.      BACKGROUND

Plaintiff, Diroy Rosendo Hooker White ("Hooker White" or "Plaintiff"), a citizen of Nicaragua, worked as a seaman and crewmember aboard MSC's cruise ship M/V MSC SEASIDE ("Seaside"), which MSC owned and operated. [ECF No. 1-2 ("Complaint") ¶¶ 2, 5]. In March 2023, non-party MSC Cruise Management (UK), Ltd., hired Hooker White to work on MSC's Seaside as a Bar Boy. *Id.* ¶¶ 13, 15–16.

On April 3, 2023, Hooker White executed a Seafarer's Employment Contract ("Employment Contract") with MSC Malta Seafarers Company Limited to work onboard vessels operated by MSC Cruise Management. [ECF No. 4-1]. MSC attached a copy of the

Employment Contract to its Motion. [ECF No. 4-1]. The Employment Contract incorporates a Collective Bargaining Agreement ("CBA") in several provisions.[1] Specifically, the Employment Contract provides, in relevant part, as follows:

> By signing this agreement I acknowledge the below:
>
> 1. The current ITF Collective Agreement (CBA) shall be incorporated into and to [*sic*] form part of the contract[.]
>
> * * *
>
> 6. I have read, understood and agreed articles 14, 15, 16 of the current ITF Collective Agreement (CBA) regarding the Medical Assistence [*sic*] cover by MSC[.]
>
> * * *
>
> 16. I further agree that any nature out of this Employment Agreement or my employed [*sic*] aboard the vessel shall be governed by the Laws of the vessel's flag state, except as expressly provided herein, and any disputes hereunder shall be adjudicated [i]n that jurisdiction only. I further agree that all rights and obligations contained in the Collective Agreement between Msc Malta Seafarers Co. Ltd. and FEDERAZIONE ITALIANA TRASPORTI – CISL - ITF INTERNATIONAL DEPARTMENT – Italy, as amended from time to time, apply to this Employment Agreement[.]

[ECF No. 4-1 at 2].

In turn, Article 31 of the CBA between MSC Malta Seafarers Company Limited and the ITF provides as follows:

> Grievances and disputes which remain unresolved after a sixty (60) day period, must be referred to arbitration to the exclusion of any other legal or court proceeding as set forth in this Agreement. It is further agreed that any and all claims from a Seafarer against the Company, Company's parent, subsidiary and sister entities, Company's vessels or the operators of such vessels, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels, including, but not limited to, Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical

---

[1] This Court may consider the Employment Contract and the Collective Bargaining Agreement submitted in support of the Motion to Dismiss because it is central to Plaintiff's claims and referenced in the Complaint. *See Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (courts may consider documents that are central to the claims made in the complaint).

care, or maintenance and cure, whether based in tort or contract or under the laws of any nation or jurisdiction, shall be arbitrated in accordance with the terms and conditions of this Agreement.

[ECF No. 4-1 at p. 31].

Hooker White alleges that on March 24, 2023, while in the performance of his duties as a Bar Boy onboard the Seaside, he suffered a severe injury to his lower back. Compl. ¶ 25. He alleges that he was "required to lift and carry unreasonably heavy boxes of alcohol, and due to too many boxes for the limited persons to lift and being overworked, he bent down to lift a heavy box and during the lift severely injured his back." *Id.* According to Hooker White, the vessel was "short-handed," and he "was required to do the job of two crewmembers at the time, lifting an excessive load without assistance." *Id.* ¶ 26. Hooker White reported the injury to his supervisor and the ship's doctor. *Id.* ¶ 28. He alleges that he received medication at the ship's infirmary, was evaluated shoreside and diagnosed with lumbago with sciatica, and was subsequently repatriated to Nicaragua without diagnostic imaging. *Id.* ¶¶ 28–29. Hooker White claims that MSC failed to provide appropriate medical treatment, thus causing his condition to worsen and entitling him to maintenance and cure. *Id.* ¶¶ 33–35.

On March 21, 2026, Hooker White filed a Seaman's Complaint in the Seventeenth Judicial Circuit in and for Broward County, Florida, against MSC. [ECF No. 1-2 ("Complaint")]. In the Complaint, Hooker White asserts the following four claims: Jones Act Negligence (Count I); Unseaworthiness (Count II); Tortious Failure to Provide Maintenance and Cure (Count III); and Failure to Provide Prompt, Proper, and Adequate Medical Care (Count IV). *Id.*

On the same day, Hooker White filed a Notice of Arbitration in accordance with the Employment Agreement and the CBA seeking relief for the same injuries he allegedly

sustained on March 24, 2023, while working onboard the Seaside as a Bar Boy. [ECF No. 4-2 ("Notice")]. The Notice further indicates that Hooker White demands that the dispute be referred to binding arbitration in London, England, pursuant to the terms of the Employment Contract and the CBA. *Id.* at 3–4.

On April 17, 2026, MSC timely removed the state court action to this Court pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1441, asserting that Plaintiff's claims are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"). *See* ECF No. 1, Notice of Removal ¶ 10. Shortly thereafter, on April 24, 2026, MSC filed the Motion now before this Court seeking to dismiss the Complaint and to compel Plaintiff to arbitrate his claims. [ECF No. 4]. On May 15, 2026, Plaintiff filed a Response [ECF No. 8], and MSC filed a Reply on May 22, 2026. The Motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARD

"For cases that center on an arbitration agreement involving foreign parties, the Court must consider the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3, and its implementing legislation, Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–208." *Presida v. MSC Cruises S.A.*, No. 25-61571-CIV, 2026 WL 562467, at *2 (S.D. Fla. Jan. 26, 2026) (Singhal, J.) (citing *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1283–84 (11th Cir. 2015); *Anderson v. MSC Cruises, S.A.*, No. 24-60715-CIV, 2025 WL 957194, at *2 (S.D. Fla. Mar. 31, 2025)). Section 202 of the Convention provides that "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described

4

in section 2 of this title, falls under the Convention." 9 U.S.C. § 202. A court that has jurisdiction under Chapter 2 "may direct that arbitration be held in accordance with the agreement at any place therein provided for," whether within or out of the United States. *Id.* § 206; *see also Escobar*, 805 F.3d at 1284 (noting that the New York Convention "generally requires the courts of signatory nations to give effect to private arbitration agreements").

In *Suazo v. NCL (Bahamas), Ltd.*, the Eleventh Circuit made clear that the Convention *requires* arbitration "so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies." 822 F.3d 543, 546 (11th Cir. 2016) (quoting *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011)). The four jurisdictional requirements are:

> (1) there is an agreement in writing within the meaning of the Convention;
>
> (2) the agreement provides for arbitration in the territory of a signatory of the Convention;
>
> (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and
>
> (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*, 855 F. App'x 468, 472 (11th Cir. 2021) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 n.7 (11th Cir. 2005)). The party seeking to compel arbitration "bears the burden of proving each of these jurisdictional prerequisites." *Singh v. Carnival Corp.*, 550 F. App'x 683, 685 (11th Cir. 2013). Non-signatories to an arbitration agreement may seek to compel arbitration under equitable estoppel doctrines, as the Supreme Court has held that the Convention "does not conflict with the enforcement of arbitration agreements by non[-]signatories under domestic-law equitable

5

estoppel doctrines." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020) ("*Outokumpu II*").

## III.   DISCUSSION

### A.   The Parties' Arguments.

In the Motion, MSC argues that Hooker White is bound by the arbitration provisions contained in the Collective Bargaining Agreement and that his claims must therefore be submitted to arbitration. *See generally* Mot. According to MSC, although it is a non-signatory to both the CBA and the Seafarer's Employment Agreement, Hooker White's claims are nonetheless subject to arbitration because (1) MSC is expressly covered under the CBA as the "operator" of the vessel, (2) the Complaint alleges substantially interdependent and concerted misconduct by signatories and non-signatories to the CBA, and, in the alternative, (3) MSC is a third-party beneficiary under the CBA. *See id.* at 5–12. MSC also argues that Hooker White already initiated arbitration of his claims by submitting a Notice of Arbitration as to MSC Cruise Management and MSC Malta Seafarers Co. Ltd. such that also proceeding with this lawsuit would be a waste of time and resources. *Id.* at 2.

In response, Hooker White argues, generally, that MSC cannot enforce the CBA because it is not a signatory to either the Employment Contract or the CBA and because MSC fails to provide a written agreement to arbitrate in support of its Motion. *See* Resp. at 8–15.

As discussed above, arbitration must be compelled "if the arbitration agreement satisfied the four jurisdictional prerequisites found in the New York Convention and none of Article II's arbitration-enforcement stage defenses [apply]." *Suazo,* 822 F.3d at 550. The four jurisdictional requirements are that (1) the agreement must be in writing; (2) the arbitration must take place in the territory of a signatory of the Convention; (3) the agreement arises out

of a legal, commercial relationship; and (4) a party to the agreement is not a United States citizen. *Bautista*, 396 F.3d at 1294. An arbitration clause will not be enforced under the Convention if it is "null and void, inoperative or incapable of being performed." *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1263 (11th Cir. 2011) (quoting New York Convention, art. II(3) and *Bautista*, 396 F.3d at 1301).

There is no dispute that three of the four requirements are met in this case. The arbitration is to take place in London, United Kingdom, which is a signatory to the Convention; Hooker White is a citizen of Nicaragua and MSC is a foreign corporation; and the CBA arises from an employment agreement which is commercial. Hooker White challenges the writing requirement and argues that the Motion is unsupported by authenticated evidence. He also argues that the arbitration clause in the CBA is null and void. *See* Resp. at 9–21.

With respect to the writing requirement, Hooker White argues that MSC has not produced the actual CBA. *See* Resp. at 3–4. He claims that the employment agreement refers to "the current ITF Collective Agreement (CBA)" whereas MSC relies on a document entitled "Collective Bargaining Agreement –Cruise Vessel, Agreement Between MSC Malta Seafarers Company Limited and Federazione Italiana Trasporti –CISL—ITF International Dept. – Italy." *Id*. He also disputes that an agreement benefiting MSC was even formed. And, according to Hooker White, "borrowing employers," like MSC here, cannot invoke the terms of written contracts between seafarers and their nominal employers. *Id*. at 2.

### B.  *Analysis Of The Parties' Arguments.*

As noted in MSC's Notice of Filing Supplemental Authorities [ECF No. 18], this Court recently addressed the parties' arguments in a similar case in which the parties were

7

represented by the same counsel of record. *See Winwright v. MSC Malta Seafarers Co.*, No. 25-cv-62017- MD, Order on Motion to Dismiss [ECF No. 25] (S.D. Fla. July 1, 2026).

At the outset, this Court has considered the Collective Bargaining Agreement [ECF No. 4-1] submitted in support of the Motion to Dismiss as it is central to the claims asserted in the Complaint. *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). In light of the fact that Hooker White himself relies on the same Agreement as a basis for his claims in this suit (*see* Compl. ¶ 17) and as a basis for his separate arbitration claims, he is hard-pressed to challenge its authenticity. *See* ECF No. 4-2. On that note, the undersigned observes that Hooker White's challenge to MSC's Motion on grounds there is no arbitration agreement or that the Agreement submitted in support of the Motion does not apply to him is, at best, disingenuous given that he relies on the exact same Agreement in his Complaint and in his Notice of Arbitration. Thus, this Court rejects Hooker White's arguments that MSC cannot rely on the Arbitration Agreement submitted in support of the Motion to Dismiss on grounds MSC has not shown that it is the actual Agreement to which he is subject. *See Winwright*, No. 25-cv-62017- MD, Order on Motion to Dismiss, ECF No. 25 at 8–9 (S.D. Fla. July 1, 2026).

Hooker White argues that there is no federal policy favoring arbitration. *See* Resp. at 10–11 (relying on *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022)). Hooker White's reading of *Morgan* is unduly overbroad. As the Supreme Court acknowledged in *Morgan*, the Federal Arbitration Act ("FAA") provides a federal "policy favoring arbitration." *Id.* The Court explained, however, "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* In that regard, the Court warned, in the context of considering an alleged arbitration waiver, that a heightened standard for considering waiver

8

is now impermissible, and courts may only place arbitration agreements on the same footing as other contracts. *Id.* at 418 (citing *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 302 (2010)). As such, waiver of arbitration rights is now evaluated under the same state-law standards governing other contract waiver issues. *Derriman v. Mizzen & Main LLC*, 710 F. Supp. 3d 1129, 1136 (M.D. Fla. 2023) (citing *Morgan*, 596 U.S. 411, 417– 418). However, the Court did not abrogate the long-standing policy favoring enforcement of arbitration provisions.

Where, as here, a party seeks enforcement of an arbitration provision under the New York Convention, which is implemented by Chapter 2 of the FAA, codified at 9 U.S.C. §§ 201-208, courts still encourage and recognize commercial arbitration agreements. The Supreme Court has explained that "the principal purpose" behind the adoption of the New York Convention, which requires contracting states to recognize written arbitration agreements, "was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standard by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Cvoro v. Carnival Corp.*, 941 F.3d 487, 495 (11th Cir. 2019) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)); *see* New York Convention, art. II(1). Thus, "the United States has a 'federal policy in favor of arbitral dispute resolution' which 'appl[ies] with special force in the field of international commerce.'" *Cvoro*, 941 F.3d at 495 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). That general principle remains intact, even after *Morgan*.

This Court also rejects Hooker White's arguments that a summary judgment standard applies to the issue of whether the parties entered into an arbitration agreement and that MSC

has not shown the absence of any material fact on this issue. *See* Resp. at 7–10 (citing *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016)). As previously explained in *Winwright*, the undersigned agrees with the reasoning in *Presida v. MSC Cruises, S.A.*, No. 25-61571-CIV, 2026 WL 562467, at *2, in which Judge Singhal explained that *Bazemore*, which involved contract formation, does not apply in circumstances like those here, in which the plaintiff has filed an arbitration claim relying on the very Agreement raised by the defendant. Instead, as in *Presida*, the issue is whether MSC, as a non-signatory, can enforce the arbitration agreement, which is a legal question for the Court.

Turning to Hooker White's argument that there is no written agreement because MSC Cruises S.A. is not a signatory to either the employment contract or the CBA, this Court again agrees with Judge Singhal's analysis in *Presida*. In *Presida*, Judge Singhal explains that under the New York Convention, arbitration agreements may be enforced against non-signatories. No. 25-61571-CIV, 2026 WL 562467, at *2 (citing *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 445 (2020)); *see also Winwright*, No. 25-cv-62017- MD, Order on Motion to Dismiss, ECF No. 25 at 10–12 (S.D. Fla. July 1, 2026).

Review of the Arbitration Agreement submitted in support of the Motion to Dismiss and relied on by Hooker White in his separate Notice of Arbitration reveals that MSC is expressly included in the CBA's arbitration clause. Specifically, the Agreement includes the "Company's vessels or the *operators* of such vessels." [ECF Nos. 4-1 at 31; 4-2] (emphasis added). Hooker White refers to MSC as the "operator" throughout the Complaint. *See* Compl. at ¶¶ 5, 10, 42. As the operator of the vessel on which Hooker White was working, MSC is expressly included in the Arbitration Agreement. Hooker White's claims against MSC are, therefore, subject to arbitration.

Finally, Hooker White raises two other challenges to the Arbitration Agreement. First, he argues that the arbitration agreement is null and void because the FAA does not authorize enforcement of arbitration clauses in seamen's employment contracts. Resp. at 18–20 (citing 9 U.S.C. § 1: "[N]othing herein contained shall apply to contracts of employment of seamen [or] railroad employees."). However, the Eleventh Circuit has held otherwise. *See Bautista v. Star Cruises*, 396 F.3d 1289 (11th Cir. 2005) (clarifying that the FAA exemption for seaman's employment contracts does not apply to arbitration agreements covered by the New York Convention); *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th Cir. 2015). Second, he argues that the arbitration agreement is unenforceable because it is not supported by valid consideration. Resp. at 20–21 (citing *Garrett v. Moore-McCormack Co.*, 317 U.S. 239 (1942); *Charpentier v. Fluor Ocean Services, Inc.*, 613 F.3d 81 (5th Cir. 1980)). In *Garrett* and *Charpentier*, the Courts considered post-injury release provisions signed by injured seamen and whether they barred those individuals' claims. That is not the issue before this Court in this case. Here, Hooker White signed an employment agreement subject to a collective bargaining agreement that covers working conditions, including wages, hours of duty, weekend and holiday work, leave, uniforms and safety equipment, training, compensation for loss of life, and resolution of grievances and disputes through arbitration. *See* ECF Nos. 4-1, 4-2. By executing the Employment Agreement, Hooker White agreed to the terms of his employment and to the CBA. Courts have routinely held that arbitration agreements involving seamen are valid. *See Winwright*, No. 25-cv-62017- MD, Order on Motion to Dismiss, ECF No. 25 (S.D. Fla. July 1, 2026); *Presida*, No. 25-61571-CIV, 2026 WL 562467, at *2 (citing *Outokumpu II*, 590 U.S. at 445; *Suazo*, 822 F.3d at 550; *Bautista*, 396 F.3d 1289; *Escobar*, 805 F.3d at 1284). Thus, Hooker White's challenges to the enforceability of the CBA are unavailing.

### IV.    CONCLUSION

Based on the foregoing, this Court concludes that the arbitration provision in the CBA incorporated into Plaintiff, Diroy Rosendo Hooker White's, Employment Contract with the MSC entities is binding.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Compel Arbitration **[ECF No. 4]** is **GRANTED**.

2.  This cause is **DISMISSED WITHOUT PREJUDICE** for Plaintiff to pursue his claims in arbitration as required by his Employment Contract and the Collective Bargaining Agreement.

3.  All pending motions, including Defendant's Motion to Stay Deadlines Pending Resolution of Motion to Compel Arbitration [ECF No. 11], are **DENIED AS MOOT**.

4.  The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers in the Southern District of Florida this 14th day of July, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record